IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs March 16, 2004

## STATE OF TENNESSEE v. ANTHONY LAMONT SINGLETON

**Appeal from the Criminal Court for Sullivan County
Nos. S45,328, S47,632     Phyllis H. Miller, Judge**

---

**No. E2003-01747-CCA-R3-CD
April 13, 2004**

---

The defendant, Anthony Lamont Singleton, pled nolo contendere to aggravated assault, a Class C felony; possession of marijuana, fourth offense, a Class E felony; evading arrest and possession of drug paraphernalia, Class A misdemeanors; and resisting arrest, a Class B misdemeanor. The trial court sentenced him as a Range I, standard offender to an effective five-year sentence. After a sentencing hearing, the trial court ordered that he serve his sentences in confinement. The defendant appeals, claiming that the trial court should have sentenced him to community corrections. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JAMES CURWOOD WITT, JR., J., joined.

Stephen M. Wallace, District Public Defender, and William Andrew Kennedy, Assistant Public Defender, for the appellant, Anthony Lamont Singleton.

Paul G. Summers, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and Kent L. Chitwood, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This case relates to incidents involving the defendant on April 11, 2001, and January 31, 2003. At the guilty plea hearing, the state gave the following factual account of the crimes: On April 11, 2001, Kingsport police officers stopped a car in which the defendant was a passenger. The driver gave the officers consent to search the car, and the officers found a portion of a marijuana cigarette in the front passenger's seat. They then searched the defendant and found rolling papers. On January 31, 2003, Kingsport police officers responded to a report that a man was firing a gun on Dale Street. When they arrived at the scene, a witness told them that the defendant had fired the gun. The officers went to the defendant's apartment and found him sitting on the roof of his apartment

building. The defendant was screaming, was acting violent, and swung a large rock at one of the officers. When the officer sprayed the defendant with Mace, the defendant jumped off the roof. He ran along Dale Street until police officers captured him. Regarding the 2001 incident, the defendant pled guilty to possession of marijuana, fourth offense, and possession of drug paraphernalia, and the trial court sentenced him to concurrent sentences of two years and eleven months, twenty-nine days, respectively. Regarding the 2003 incident, the defendant pled guilty to aggravated assault, evading arrest, and resisting arrest, and the trial court sentenced him to concurrent sentences of three years; eleven months, twenty-nine days; and six months, respectively. The trial court ordered that the sentences for the 2003 crimes be served consecutively to the sentences for 2001 crimes for an effective sentence of five years.

At the sentencing hearing, the defendant testified that he had learned a lesson in jail and that "this just ain't my life right here." He said that he had realized recently that his children needed him and that he could handle community corrections. He said that he needed to be out of jail in order to take care of his family and that he had decided to reevaluate his life. He said that he would agree to mental health, anger management, and drug counseling and that he did not have a problem with becoming employed. He said drugs were not the basis for his life.

On cross-examination, the defendant acknowledged that he had been sentenced to probation for prior convictions and that he had violated probation many times. He said he would not violate a probation sentence again because he now had his children to look forward to. He said that he had worked for fast food restaurants in the past and that he would continue to work for restaurants. He said that he realized what he did was wrong, that he had had enough of jail, and that he did not want to be a "dead beat daddy" to his children. Regarding his crimes in January 2003, he apologized to the Kingsport police officers and said that he was intoxicated. Regarding the April 2001 crimes, he said that he had been smoking marijuana before the officers stopped the car. He acknowledged that he had a bad attitude in the past but said he had started reading the Bible and realized that he was wasting his life. He asked the trial court to sentence him to community corrections because of his special needs due to his drug addiction.

According to the defendant's presentence report, the then twenty-seven-year-old defendant dropped out of high school during the eleventh grade and got his GED while in the Department of Correction. He described his physical and mental health as good and said that he began drinking alcohol when he was sixteen. He also said he began smoking marijuana in high school and began using cocaine in 1995. At the time of the report, the defendant had three young children, and his girlfriend was expecting his fourth child. The report shows that the defendant had worked at several restaurants since 1995 and was fired from Shoney's and the Sagebrush Steakhouse. The report also shows that the defendant has been convicted of at least sixteen misdemeanors, including aggravated criminal trespass, three convictions for misdemeanor marijuana possession, possession of drug paraphernalia, contributing to the delinquency of a minor, cocaine possession, evading arrest, reckless driving, and driving with a suspended license. In addition, the report reveals that he has two felony convictions for selling cocaine and has violated probation sentences several times. According

to the report, the defendant was on bond for the April 2001 offenses when he committed the January 2003 offenses.

In sentencing the defendant, the trial court noted that he was presumed to be a favorable candidate for alternative sentencing. See T.C.A. § 40-35-102(6). However, the trial court stated that the defendant's extensive criminal history demonstrated "a clear disregard for laws and morals of society" and a "failure of past efforts at rehabilitation." The trial court determined that enhancement factor (2), that the defendant "has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range," and factor (9), that the defendant "has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community," applied to all of his convictions. See T.C.A. § 40-35-114(2), (9). The trial court held that enhancement factor (14) also applied to his aggravated assault, evading arrest, and resisting arrest convictions because the defendant committed those crimes while he was on bond for the April 2001 crimes. See T.C.A. § 40-35-114(14)(A). The trial court gave all of the enhancement factors great weight. In mitigation, the trial court applied factor (1), that the defendant's conduct neither caused nor threatened serious bodily injury, to his convictions for marijuana possession and drug paraphernalia possession. See T.C.A. § 40-35-113(1). The trial court noted that the defendant had been fired from two jobs. It determined that the defendant's drug use was a chosen lifestyle and did not warrant a "special needs" community corrections sentence. The court ordered him to serve his effective five-year sentence in confinement.

The defendant contends that the trial court erred by ordering him to serve his sentences in confinement. He claims that although he is ineligible for community corrections under T.C.A. § 40-36-106(a) because he committed a crime against the person, his drug addiction constitutes "special needs" pursuant to T.C.A. § 40-36-106(c). The state contends that the trial court properly denied alternative sentencing. We agree with the state.

When a defendant appeals the manner of service of a sentence imposed by the trial court, this court conducts a de novo review of the record with a presumption that the trial court's determinations are correct. T.C.A. § 40-35-401(d). The presumption of correctness is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The burden of showing that the sentence is improper is upon the appealing party. T.C.A. § 40-35-401(d), Sentencing Commission Comments. However, if the record shows that the trial court failed to consider the sentencing principles and all relevant facts and circumstances, then review of the sentence is purely de novo. Ashby, 823 S.W.2d at 169.

When determining if incarceration is appropriate, a trial court should consider that (1) confinement is needed to protect society by restraining a defendant who has a long history of criminal conduct, (2) confinement is needed to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to people likely to commit similar offenses, or (3) less restrictive measures than confinement have frequently or recently been applied unsuccessfully to the defendant. Ashby, 823 S.W.2d at 169 (citing T.C.A. §

40-35-103(1)(A)-(C)). The trial court may also consider the mitigating and enhancing factors set forth in T.C.A. §§ 40-35-113 and -114. T.C.A. § 40-35-210(b)(5); State v. Boston, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996). Additionally, a trial court should consider a defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. T.C.A. § 40-35-103(5); Boston, 938 S.W.2d at 438.

Based upon our de novo review, we conclude that the trial court did not err by ordering the defendant to serve his entire five-year sentence in incarceration. The defendant had two prior felony convictions for cocaine possession, three misdemeanor convictions for marijuana possession, and many other misdemeanor convictions. He had violated probation sentences before and had committed three of the offenses in this case while he was on bond for the other two offenses. We believe the record demonstrates that the defendant's previous sentences involving release into the community were unsuccessful and that he does not reflect a high potential for rehabilitation. Although the defendant contends that his drug addiction constitutes "special needs," he has continued to commit crimes without seeking treatment, and he has not demonstrated that he has special needs that can best be treated in the community. We affirm the trial court's denial of a community corrections sentence.

Based upon the foregoing and the record as a whole, we affirm the judgments of the trial court.

_____
JOSEPH M. TIPTON, JUDGE

-4-