IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 15, 2004

## STATE OF TENNESSEE v. MICHAEL RAY McGILL

**Appeal from the Criminal Court for Knox County**
**No. 75425      Richard Baumgartner, Judge**

---

**No. E2003-02727-CCA-R3-CD - Filed July 15, 2004**

---

The defendant, Michael Ray McGill, pled guilty in the Knox County Criminal Court to violating a motor vehicle habitual offender order, a Class E felony. Pursuant to a plea agreement, the defendant received a four-year sentence with the manner of service to be determined by the trial court. After a sentencing hearing, the trial court denied the defendant's request for an alternative sentence and ordered that he serve his sentence in the Department of Correction. The defendant appeals, claiming that the trial court erred by sentencing him to confinement. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which THOMAS T. WOODALL and JOHN EVERETT WILLIAMS, JJ., joined.

Mark E. Stephens, District Public Defender, and Randall J. Kilby, Assistant Public Defender, for the appellant, Michael Ray McGill.

Paul G. Summers, Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; Randall E. Nichols, District Attorney General; Marsha Mitchell, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

This case results from the defendant's arrest on January 25, 2002, for violating a motor vehicle habitual offender order. At the guilty plea hearing, the state gave the following account of the crime:

> [O]fficers with the Knoxville Police Department spotted Mr. McGill
> driving an automobile in this county on Friday, January the 25th,
> 2002. He was driving a Chevy Lumina that did not have proper
> registration. Registration had expired on his tags. On further

investigation they discovered that [his license] had been revoked and . . . that actually he was declared a habitual motor vehicle offender.

At the hearing, the defendant told the trial court that he had cleaned up his life, that he was employed, and that he paid child support.

According to the presentence report, the then forty-one-year-old defendant dropped out of high school during the eleventh grade. He described his physical health as good and his mental health as excellent. He said that he began drinking alcohol when he was seventeen, that he used cocaine from 1990 through 1992, and that he used marijuana from 1979 through 1999. At the time of the report, the defendant had a wife and two children. He attended Alcoholics Anonymous classes weekly. The report reflects that the defendant was employed at Perma Chink Systems. The report also reflects that the defendant has been convicted of at least twenty-six prior offenses, including eight convictions for driving without a license, five convictions for DUI, three convictions for marijuana possession, three convictions for public intoxication, two convictions for violating a habitual traffic offender order, resisting arrest, evading arrest, theft under $500, and reckless endangerment.

In denying the defendant's request for an alternative sentence at the sentencing hearing, the trial court stated the following:

> I believe it's time for Mr. McGill to go on and serve his sentence. He was in the penitentiary. He got paroled. He--that parole was revoked for operating a motor vehicle and evading arrest back then. He had--he continued to abuse substances even while he was in custody. He's now picked up another HMVO conviction. He's just not a suitable candidate for release in the community.

The defendant contends that the trial court erred by denying his request for alternative sentencing because he had changed his lifestyle at the time of the offense. He asserts that like the defendant in State v. Michael D. Martin, No. E2002-03005-CCA-R3-CD, Sullivan County (Tenn. Crim. App. Jan. 28, 2004), alternative sentencing was appropriate in his case because he had proven that he was open to rehabilitation. The state claims that the trial court properly denied alternative sentencing. We hold that the trial court properly required confinement.

When a defendant appeals the manner of service of a sentence imposed by the trial court, this court conducts a de novo review of the record with a presumption that the trial court's determinations are correct. T.C.A. § 40-35-401(d). However, the presumption of correctness is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The burden is on the appealing party to show that the sentence is improper. T.C.A. § 40-35-401(d), Sentencing Commission Comments. This means that if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and

gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, we may not disturb the sentence even if a different result were preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

When determining if incarceration is appropriate, a trial court should consider whether (1) confinement is needed to protect society by restraining a defendant who has a long history of criminal conduct, (2) confinement is needed to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to people likely to commit similar offenses, or (3) less restrictive measures than confinement have frequently or recently been applied unsuccessfully to the defendant. Ashby, 823 S.W.2d at 169 (citing T.C.A. § 40-35-103(1)(A)-(C)). The trial court may also consider the mitigating and enhancing factors set forth in T.C.A. §§ 40-35-113 and -114. T.C.A. § 40-35-210(b)(5); State v. Boston, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996). In addition, a trial court should consider a defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. T.C.A. § 40-35-103(5); Boston, 938 S.W.2d at 438. In conducting a de novo review, we must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf, and (7) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-102, -103, -210; see Ashby, 823 S.W.2d at 168.

In Michael D. Martin, this court held that the defendant should be given an alternative sentence that allowed him to maintain his employment and support his family because the record in the case readily showed that the defendant had changed his life and was socially reliable after becoming married. Slip op. at 2. The record showed that he rode with a neighbor to work each morning and was picked up by his wife to avoid driving illegally. His employer testified that during the defendant's four years of employment, he had never been late to work or missed work without calling first. The record established that the defendant was active in his church and was deeply involved in his wife's children's activities in the community. In fact, even the incident giving rise to the offense, his misguided decision to drive, occurred because he was the only person available to drive a float on which the children were riding. The record in Michael D. Martin showed that the defendant had completely changed his life, that he was a productive member of society, and that the offense was an aberration inconsistent with his changed behavior. Id.

In the present case, unlike Michael D. Martin, the record does not establish that the defendant has changed his lifestyle, that he is open to rehabilitation, or that he is socially reliable. The defendant presented no witnesses at the sentencing hearing to show that he had changed his lifestyle. The only statements regarding the defendant's current conduct came from the defendant himself in brief statements he made to the trial court at the guilty plea hearing. The defendant told the court that he had been recovering from his former lifestyle for three years, that he had a job, and that he paid child support. The presentence report also reflects that the defendant attended AA meetings. However, a memorandum to the trial court from Randall Hampson of the Enhanced Supervision Program stated that the defendant had "never successfully completed a period of supervised release."

It said that in his interview, the defendant "minimized his criminal activity and his failure to comply with the orders of the Court." Relative to his not appearing at his first scheduled sentencing hearing in this case, the memorandum noted that the defendant said it was because he had "other things" on his mind. It also noted a discrepancy in the defendant's explanations during his interview and in his presentence report regarding his prescription drug use and suggested that he still might be abusing drugs. The memorandum stated that the defendant was a poor candidate for supervised release, asserting that he took little responsibility for his criminal behavior, made minimal effort to address his substance abuse issues in the past, and continued to disregard the law. We believe the record in this case does not "readily show" that the defendant has changed his lifestyle or that he is now socially reliable. We conclude that the trial court was justified in requiring the defendant to serve his sentence in confinement.

Based on the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
JOSEPH M. TIPTON, JUDGE